UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THEODORE SIMPKINS<br><br>        Plaintiff,<br><br>    v.<br><br>SOUTHERN WINE AND SPIRITS<br>OF AMERICA, INC., et al.,<br><br>        Defendants.<br>_____/ | No. C-10-02353-EDL<br><br>**ORDER GRANTING MOTION TO REMAND; DENYING MOTIONS TO DISMISS AS MOOT; DENYING REQUEST FOR FEES; GRANTING REQUESTS TO SEAL** |

**I.    Introduction**

On April 28, 2010, Plaintiff Theodore Simpkins filed a Complaint for Declaratory Relief and Damages in Alameda County Superior Court. The complaint contains four California state law claims against Southern Wine, its Florida-based CEO and COO, and its California-based Controller Mr. Melahn: (1) violation of California Business & Professions Code § 16600 by Plaintiff's former employer, Southern Wine & Spirits of America, Inc. ("Southern Wine"); (2) breach of contract by Southern Wine; (3) fraud; and (4) negligent misrepresentation. On May 28, 2010, the defendants removed the action to this Court on the basis of fraudulent joinder. Specifically, they contend that, although Plaintiff and individual defendant Mr. Melahn are both citizens of California, complete diversity exists because both Florida and California law preclude a suit against Mr. Melahn in tort for his acts related to the performance of a contract pursuant to the states' respective "economic loss

rules" and, therefore, Plaintiff's claims against Mr. Melahn do not establish diversity. Additionally, Defendants' removal notice contends that the Employment Agreement in question contains a Florida venue and choice-of-law provision, and that Southern Wine filed a federal case against Simpkins involving the same issues several weeks ago.

Thereafter, Plaintiff filed the instant Motion to Remand on the basis that Mr. Melahn was not fraudulently joined because neither California nor Florida's economic loss rule obviously bars his claims against Mr. Melahn under the "settled" laws of either state. For the following reasons, Plaintiff's Motion to Remand is GRANTED. While it is a very close question, and one that might very well have been answered differently if the Court were not constrained by the very high hurdle Defendants must overcome to establish fraudulent joinder, the Court concludes that "settled" law does not "obviously" bar Plaintiff's claims against Mr. Melahn. Therefore, Plaintiff has not fraudulently joined a non-diverse defendant to defeat diversity jurisdiction under 28 U.S.C. § 1332, and remand is warranted. Plaintiff's request for recovery of costs and fees associated with the remand motion as well as two pending motions to dismiss and discovery relating to these motions is DENIED.

**II.    Background**

Mr. Simpkins was an employee of Southern Wines for over 40 years, most recently serving as Executive Vice President and Managing Director for Southern Wine's California division and Executive Vice President of Winery Relations for California's Wine Districts. Compl. ¶ 3; Braunig Decl. Ex. A. In 2008, Plaintiff renegotiated his employment contract with Southern Wine, and in exchange for an annual base salary of at least $750,000 and bonuses through 2015, the new contract contained various restrictive covenants prohibiting him from working for Southern Wine's competitors, soliciting its suppliers, or hiring away its workers. See generally Compl. Ex. A (Employment Agreement). The Agreement also provided that it "shall be governed in all respects, whether as to validity, construction, capacity, performance, or otherwise, by the laws of the State of Florida. The parties agree the venue of any action arising out of this Agreement shall be in Miami-Dade County, Florida. Each of the parties shall submit and hereby consent to the exercise of jurisdiction by the appropriate court in Miami-Dade County, Florida." Id. at ¶ 19.

2

1    On April 5, 2010, Plaintiff resigned from Southern Wine to accept a position with Young's Market Company, a competitor. Compl. ¶¶ 32-33. Days later, Southern Wine filed suit against Plaintiff in the Southern District of Florida for breach of contract, and moved for a preliminary injunction to enforce the restrictive covenants against him. See Defendants' Request for Judicial Notice Exs. 1-4 (documents publicly filed in Southern District of Florida). Plaintiff responded with counterclaims for breach of contract, fraud, and negligent misrepresentation against Southern Wine. Discovery in the Florida action is progressing rapidly – documents have been exchanged and depositions of the key players have been taken. See Braunig Decl. Exs. B, C, H. Plaintiff did not name any individuals defendants, including Mr. Melahn, in his Florida counterclaims. Instead, Plaintiff brought this separate action against Southern Wine, its Florida-based principals, and its California-based Controller, Mr. Melahn, in California state court for declaratory relief, breach of contract, fraud and negligent misrepresentation. These claims are primarily based on his allegation that Southern Wine and its agents miscalculated the California profits on which Plaintiff's bonus payments were based, which by contract were to be based on GAAP, thereby depriving him of over two million dollars in bonus payments owed. The Complaint also seeks declaratory relief that the restrictive covenants are unenforceable and that Southern Wine breached its agreement with Plaintiff.

With respect to Mr. Melahn specifically, the Complaint alleges that he "participated in SWS's computation of its 2008 and 2009 profits from its California operations . . . with knowledge that the practices used to calculate SWS's 2008 and 2009 profits from its California operations were inconsistent with SWS's prior practices and with generally accepted accounting principles consistently applied." Compl. ¶ 23. Additionally, Mr. Melahn allegedly "communicated this false representation of the California divisions' operating results to Plaintiff in explaining the basis for his bonus compensation calculation." Id.; see also ¶ 44 ("individual defendants misrepresented the 2008 and 2009 operating results for SWS's California divisions to Plaintiff with the intent that Plaintiff rely on their representations by accepting artificially reduced bonus payments for those years."). The Complaint specifies that the individual defendants, including Mr. Melahn, were acting as agents of Southern Wine. Id. at ¶ 45. The Complaint seeks unspecified compensatory and punitive damages from all Defendants for fraud and negligent misrepresentations. Id. at Prayer ¶ B.3.

Defendants argue that the Complaint does not point to a specific fraudulent or negligent statement made by Mr. Melahn, but really only allege his participation in a breach of Plaintiff's employment contract. They point to evidence obtained during discovery in the Florida case indicating that Mr. Melahn's communications to Plaintiff about his 2009 consisted of an email stating: "Ted, Attached is the earned GM Performance bonus from 2009 to be paid out on March 12, 2010. Have a look and let me know if you have any questions. Thank you." See Braunig Decl. Ex. G; see also Ex. F (Melahn Depo.) at 168-69 (no conversations about bonus calculation other than about taxation). Defendants argue that Plaintiffs general statements about Mr. Melahn simply allege that he provided false operating results for the California division, which resulted in an understated bonus, not any independent fraud. Defendants also point to Plaintiff's own deposition testimony in the Florida action, where he stated that "I don't think anyone lied to me," and expressly denied that Mr. Melahn lied to him. Braunig Decl. Ex. B (Simpkins Depo.) at 368-69. When questioned whether "there was some miscalculation of the bonus that was intentional by someone at Southern," Plaintiff responded, "I don't know." Id. at 370.

Plaintiff responds that discovery in the Florida case is just beginning and is currently directed towards Defendants' preliminary injunction motion, not his counterclaims against them, and that Mr. Melahn is not a defendant in the Florida action. Plaintiff also points to evidence that Mr. Melahn prepared monthly financials, year end summaries, and annual bonus calculations and communicated these to Plaintiff (as part of a distribution group). Rubin Decl. Ex. E (Melahn Depo.) at 41-42. Mr. Melahn also confirmed that he represented that the financials conformed to GAAP consistently over time. Id. at 42; see also Ex. D (Simpkins Depo.) at 377-78 (he understood that everything conformed to GAAP). Despite this confirmation, Plaintiff's expert has concluded that some of the accounting practices did not conform to GAAP and were misrepresented, thereby lowering Plaintiff's bonus. Rubin Decl. Ex. G at 11-20. Plaintiff argues that his deposition statement in the Florida litigation that Mr. Melahn did not lie to him does not contradict his claims, because Mr. Melahn is not a party to that action and Plaintiff was simply uncomfortable with the loaded term "liar." Plaintiff also argues that whether he subjectively deems Mr. Melahn a "liar" is irrelevant to whether he is liable for fraud (which could be based on reckless disregard for the truth rather than intentional lying) or negligent misrepresentation.

### III. Legal Standard

Federal district courts have jurisdiction over suits for more than $75,000 where the citizenship of each plaintiff is different from that of each defendant. 28 U.S.C. § 1332(a). Although an action may be removed to federal court only where there is complete diversity of citizenship, 28 U.S.C. §§ 1332(a), 1441(b), "one exception to the requirement for complete diversity is where a non-diverse defendant has been 'fraudulently joined.' " Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001). Joinder is fraudulent "'[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" Hamilton Materials, Inc. v. Dow Chemical Corp., 494 F.3d 1203, 1206 (9th Cir.2007) (quoting McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987)).[1] In such a case, the district court may ignore the presence of that defendant for the purpose of establishing diversity. Morris, 236 F.3d at 1067.

The Court may look to affidavits and other evidence to determine whether the joinder is a sham, but must resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party. Calero v. Unisys Corp., 271 F.Supp.2d 1172, 1176 (N.D.Cal. 2003). There is a heavy burden on the defendant, as "[f]raudulent joinder must be proven by clear and convincing evidence." Hamilton Materials, 494 F.3d at 1206. "If there is a non-fanciful possibility that plaintiff can state a claim under [state] law against the non-diverse defendants the

---

[1] In addition to the well-settled McCabe "obvious according to the settled rules of the state" standard, in Hunter v. Philip Morris USA, 582 F.3d 1039, 1046 (9th Cir. 2009) the Ninth Circuit approvingly quoted the Eleventh Circuit case of Tillman v. R.J. Reynolds Tobacco, 340 F.3d 1277, 1279 (11th Cir.2003) (per curiam), where the Eleventh Circuit found that, "if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." In Hunter, the Ninth Circuit noted that parties raising fraudulent joinder "face both the strong presumption against removal jurisdiction and the 'general presumption against fraudulent joinder.'" The parties dispute whether the McCabe "obvious" standard, or the arguably even more stringent "possibility" standard, applies. However, the Court need not resolve this dispute because remand is appropriate under either formulation.

At oral argument, defendants also contended that McCabe supports its position that an employee is fraudulently joined if the claim is really against the employer for breach of contract. Instead, McCabe found that a plaintiff could not state a wrongful discharge claim directly against corporate advisors who acted in their managerial capacity by allegedly inducing the corporation to terminate him. McCabe, 811 F.2d at 1339. The Court relied on the privilege afforded to "an advisor motivated in part by a desire to benefit his principal" in inducing a breach of contract to find that the plaintiff could not state a wrongful discharge claim directly against the managers. Id. The Court did not rely on or even mention the economic loss rule, which is what is at issue here. Neither side has argued that the "manager's privilege" at issue in McCabe applies to bar Plaintiff's claims here.

5

court must remand." Smith v. AllState Ins. Co., 2010 WL 2510117, *3 (N.D.Cal. June 17, 2010) (Illston, J.) (quoting Macey v. Allstate Prop. & Cas. Ins. Co., 220 F.Supp.2d 1116, 1118 (N.D.Cal.2002)).

## IV.     Analysis

### A.      Choice of Law

Defendants' notice of removal contends that Plaintiff's tort claims against Mr. Melahn necessarily fail because they are intertwined with his breach of contract claims, and the applicable "economic loss rule" forbids these claims. In their briefs, the parties disputed which state's economic loss rule this Court should apply in determining whether Plaintiff can state a claim against Mr. Melahn. Plaintiff argued that there was no conflict between California and Florida law but that, in any event, California's choice of law rules require the application of California law. Defendants countered that California's choice of law rules – specifically in connection with the choice of law clause in the Employment Agreement – require that Florida law be applied. However, at oral argument Defendants conceded that the law in both states is similar enough that there is not a true conflict. In light of the parties' agreement that no true conflict exists and thus the result would be the same under either law, the Court need not delve into the quagmire of complicated and very close choice of law- related questions that it would otherwise need to address.[2] Instead, the Court examines this case under applicable California law and notes that, as the parties agree, the result would be the same under Florida law if it were applied instead.

### B.      Plaintiff's Claims Are Not Obviously Barred By Settled Law Because It Is Unclear Whether The Economic Loss Rule Applies to a Non-Contracting Employee Such as Mr. Melahn

In order to show fraudulent joinder, Defendants must establish through clear and convincing evidence that Plaintiff's complaint fails to state a claim against Mr. Melahn because his tort claims

---

[2] These close questions include, but are not limited to: whether Mr. Melahn was a "representative" as the term was used in the Agreement, whether he was an intended beneficiary of the choice of law provision in the Agreement, and whether the Agreement or any portion thereof is void or voidable as an adhesion contract or due to attorney conflict – all of which would likely require consideration of parol evidence not before the Court. Additional close questions include whether the choice of law provision in the Agreement should apply to the tort claims at issue here – which in turn would require an evaluation of the breadth of the California Supreme Court's decision in Nedlloyd Lines B.V. v. Superior Court, 3 Cal. 4th 459, 470 (1992) and a comparison of the choice of law clause and claims at issue here with those in Nedlloyd. A full choice of law analysis could also require application of the multi-factor "governmental interests" balancing test. Because the parties agree that there is no true conflict, the Court does not address these questions but notes that their resolution does not appear to be "obvious" under settled law, in which case they would fall in favor of Plaintiff.

are barred by the economic loss rule, and the failure is obvious according to settled law. In general, the economic loss rule precludes a plaintiff from suing a defendant for a tortious breach of contract without alleging that the defendant has violated a duty separate from the breach of contract. See Erlich v. Memezes, 21 Cal. 4th 543, 551 (1999) ("conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law"). Although Plaintiff's claims against Mr. Melahn are intertwined with his contract claims and there do not appear to be any separate damages resulting from any purported breach of duty beyond the contract damages, Defendants still cannot meet their heavy burden because the law is unsettled as to whether privity is required, or instead employees of contracting parties such as Mr. Melahn may avail themselves of the economic loss rule.

Specifically, Plaintiff argues that the economic loss rule does not apply to his claims against Mr. Melahn because he was not even a party to the Employment Agreement in question (and thus had no duty not to breach it), so the contract claim against Southern Wine cannot subsume his tort claims against Mr. Melahn. Plaintiff points out that no California case has applied the economic loss rule to bar tort claims against an agent who commits tortious acts, even if done in the course of his or her employment. Plaintiff relies on a recent decision from this district, Legal Additions LLC v. Kowalski, 2010 WL 1999894 (N.D. Cal. May 18, 2010), where the court found that the immunity enjoyed by a contracting corporate defendant because of the economic loss rule did not extend to a non-contracting individual corporate agent because the plaintiff alleged that the officer personally engaged in tortious wrongdoing. Id. at *3.

Defendants disagree with the holding of Kowalski and argue that Plaintiff's reliance on a federal case is improper, even though that case rested solely on its analysis of California law. However, they acknowledge that California courts have not addressed the precise question at issue here, and are left to argue that the "better rule – and the rule California courts would *likely* choose" is one that extends the economic loss rule to a contracting party's employees for actions relating to the performance of a contract. Opp. at 20-21 (emphasis added). Defendants discuss several decisions on different but related issues that they contend indicate that a California court would extend the economic loss rule to individual employees acting as agents for the corporation because they have been reluctant to create exceptions to the rule. Defendants also cite Bugna v. Fike, 80 Cal.App.4th 229, 233-234 (2000) for the position that California courts have held that parties may

7

1 not circumvent contractual obligations such as venue provisions by suing related non-signatories.

2 Bugna held that the test is whether non-signatories were "close to the contractual relationship, not

3 whether they were close to the third party signator." Id. at 235.  Bugna went on to explain that:

> This makes sense because the forum selection clause is part of the underlying contract, and it is the contractual relationship gone awry that presumably spawns litigation and activates the clause.  Giving standing to all closely related entities honors general principles of judicial economy by making all parties closely allied to the contractual relationship accountable in the same forum, thereby abating a proliferation of actions and inconsistent rulings.

8 In reaching this conclusion, Bugna relied on Bancomer, S. A. v. Superior Court, 44 Cal.App.4th

9 1450, 1461 (1996) as follows: "For [defendant] to demonstrate that it was 'so closely related to the

10 contractual relationship' that it is entitled to enforce the forum selection clause, it must show by

11 specific conduct or express agreement that (1) it agreed to be bound by the terms of the purchase

12 agreement, (2) the contracting parties intended [defendant] to benefit from the purchase agreement,

13 or (3) there was sufficient evidence of a defined and intertwining business relationship with a

14 contracting party."

15 Although the policy rationale articulated by Bugna makes sense and could shelter Mr.

16 Melahn under the "intertwining business relationship" prong, the law as to whether the economic

17 loss rule extends to bar tort claims against a contracting party's individual employees is unsettled, as

18 Defendants had to acknowledge.   Moreover, because Kowalski, the case most directly on point,

19 favors Plaintiff, the Court cannot find that settled law obviously bars his claims against Mr. Melahn.

20 See Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009) ("The 'strong presumption

21 against removal jurisdiction means that the defendant always has the burden of establishing that

22 removal is proper,' and that the court resolves all ambiguity in favor of remand to state court.").  The

23 Court is aware that the result it is compelled to reach in light of the very high standard for

24 establishing fraudulent joinder may not further the interests of judicial economy and deterrence of

25 forum shopping, but it would be overreaching for this Court to make a determination as to what a

26 California court *might* do when faced with this issue for the first time.  See Lieberman v. Meshkin,

27 Mazandarani, 1996 WL 732506, *3 (N.D.Cal. 1996) ("Fraudulent joinder is not shown merely

28 because the action is likely to be dismissed against that defendant. The standard is not whether

plaintiffs will actually or even probably prevail on the merits, but whether there is a possibility that

they may do so."). Remand is required on this basis alone.[3] The Court therefore does not reach the alternative issue pressed by both sides – whether, if the economic loss rule applies to Mr. Melahn, Plaintiff has alleged a separate duty and damages or whether the rule would bar the tort claims Plaintiff has brought against him.

For all of the foregoing reasons, Plaintiff's Motion to Remand is GRANTED.

### C.     Plaintiff's Request for Attorneys Fees

Plaintiff's motion seeks unspecified costs and fees pursuant to 28 U.S.C. § 1447(c), which provides that a remand order "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Defendants' Opposition does not address this issue. On Reply, Plaintiff argues that the removal appears to have been made to delay the case and was not even "fairly supportable." Plaintiff seeks recovery of costs and fees incurred to brief this motion, as well as two pending motions to dismiss, and factual inquiries required to support Plaintiff's positions on the motions. However, given the multitude of complex and unclear issues raised and argued by both parties with respect to the remand motion, this argument is not well-taken. The request for costs and fees is DENIED.

### D.     Sealing Requests

The parties seek an Order sealing various exhibits, including internal emails and documents and deposition transcripts which were designated attorneys eyes only. Good cause appearing, the sealing requests are GRANTED.

---

[3] Even if it applied, Florida law is similarly unclear and would warrant remand. In <u>Indemnity Ins. Co. of North America v. American Aviation, Inc.</u>, 891 So.2d 532, 536 (Fla. 2004), the Florida Supreme Court stated that the economic loss rule applies "when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract," although it did not directly address the issue of an employee who is not in privity but acts as the contracting party's agent. In contrast, one lower Florida court case examining a plaintiff's suit against a contracting company's employee for negligent performance of a contract held that "when suit is barred against a corporation by the contractual privity economic loss rule, the contracting party cannot bypass the rule by suing corporate employees for their negligent performance of the contract." See <u>Vesta Const. and Design, L.L.C. v. Lotspeich & Associates, Inc.</u>, 974 So.2d 1176, 1180 (Fla. App. 5 Dist. 2008); see also <u>Ben-Yishay v. Mastercraft Development, LLC</u>, 553 F.Supp.2d 1360, 1371 (S.D.Fla. 2008) (claims for fraudulent inducement and fraudulent misrepresentation with respect to the contract at issue would not lie against a non-signatory officer of a company, and to find otherwise "would be inconsistent with the rationale of the economic loss rule and would eviscerate its application in cases where a corporation is a party to the agreement."). It is unclear whether these appellate court cases are consistent with Florida Supreme Court law which appears to require privity, or whether the Florida Supreme Court would endorse exceptions to the privity requirement for a non-signatory corporate agent.

### E. Motions to Dismiss

In addition to this Motion to Remand, Defendants have filed a Motion to Dismiss Pursuant to Rule 12, primarily on the basis that both Florida and California's economic loss rules bar Plaintiff's claims against Mr. Melahn. The Florida case is also the topic of a separately filed Motion to Dismiss based on the first-to-file rule. While the issues raised in the Motions to Dismiss overlap with the issues raised in the remand motion, the legal standards for remand and dismissal are different and the remand motion is jurisdictional. Therefore, the Court continued the hearing on the Motions to Dismiss until after the motion to remand was decided. Because the Court remands the matter to state court, it DENIES the Motions to Dismiss as MOOT.

**IT IS SO ORDERED.**

Dated: August 9, 2010

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge